## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| IRIS PEREZ, on behalf of herself and of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>JIM KOONS MANAGEMENT COMPANY, d/b/a JIM KOONS AUTOMOTIVE COMPANIES<br>9822 Sorell Avenue<br>Potomac, MD 20854,<br>  Serve: Registered Agent:<br>     Thomas M Wood IV, Esq.<br>     27th FLR<br>     One South Street<br>     Baltimore MD 21202<br><br>    *Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CONSUMER CLASS ACTION COMPLAINT

Plaintiff Iris Perez ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), alleges the following against Jim Koons Management Company, d/b/a Jim Koons Automotive Companies ("Koons" or "Defendant") based on personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE CASE

1.  This class action arises out of a recent data breach involving the unauthorized disclosure of Plaintiff's and Class Members' sensitive, confidential information by Defendant, a

domestic for-profit automotive group with locations in and around the Washington, D.C. metro area.

2.      Plaintiff brings this class action case against Koons for its failure to properly secure and safeguard its sensitive information that customers of Defendant entrusted to it, including, without limitation, name, address, Social Security number, driver's license number, and financial account information (collectively "personally identifiable information" or "PII")[1] which Koons collected at the time Plaintiff and Class Members made purchases or requested information about vehicle financing or purchasing from Koons, and for failing to provide timely, accurate and adequate notice to Plaintiff and other Class Members that their PII had been compromised and precisely what types of information were improperly accessed and/or removed.

3.      According to Defendant's website, Defendant is a privately owned chain of automotive dealerships that operates 22 locations throughout the Mid-Atlantic Region.[2] Koons is one of the 15 largest privately-held dealership organizations in the United States and the "largest automotive group locally headquartered."[3]

4.      On January 14, 2022, Koons announced that, on June 5, 2021, it had discovered that private information stored on its computer systems had been accessed and encrypted by an unauthorized third-party (the "Data Breach").

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security number, passport number, driver's license number, financial account number)
[2] https://www.koons.com/locations/index.htm (last visited Feb. 22, 2022).
[3] https://www.koons.com/dealership/about.htm#:~:text=The%20Jim%20Koons%20Automotive%20Companies,throughout%20the%20Mid%2DAtlantic%20Region. (last visited Feb. 22, 2022).

5.      At the time of the Data Breach, the PII of Plaintiff and Class Members was accessible unauthorized persons due to Defendant's failure to implement adequate security mechanisms.

6.      At the time of the Data Breach, none of the PII had been encrypted by Defendant.

7.      At the time of the Data Breach, the PII included information that Defendant no longer had a reasonable need to maintain.

8.      On or about January 14, 2022, Koons posted a notification on its website ("Website Notice") that it "discovered unusual activity on certain [] computer systems beginning on June 5, 2021."[4]

9.      Koons reported to the Maine Attorney General that the PII of 114,153 individuals was compromised in the breach.[5]

10.     Plaintiff's and Class Members' PII was compromised due to Defendant's acts and omissions and its failure to properly protect the sensitive private information its customers provided to Koons as a condition of doing business with Defendant including, without limitation, names, addresses, Social Security numbers, driver's license numbers, and financial account information (in combination with security codes, access codes, passwords, or PINs for the accounts).

11.     Defendant promotes a "Privacy Policy" (the "Privacy Policy") on its website, where it promises to "take reasonable physical, electronic and managerial measures to safeguard and secure any information [Plaintiff and Class Members] provide to [it] (e.g. data will be stored in protected databases on secured servers with restricted access)."[6]

---

[4] Exhibit 1 ("Website Notice").
[5] https://apps.web.maine.gov/online/aeviewer/ME/40/ec8e5dc7-e259-4847-8a94-23b789691b54.shtml (last visited Feb. 22, 2022).
[6] Exhibit 2 ("Privacy Policy") *available at* https://www.koons.com/privacy.htm (last visited Feb. 22, 2022)..

12.     Defendant could have prevented this Data Breach.  Data breaches on other computer systems containing sensitive personal information of customers and employees have been on the rise. While many retailers, restaurants, banks, and other companies have responded to recent breaches by adopting technology that helps make databases more secure, Defendant did not.

13.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those individuals.

14.     The exposed PII of Plaintiff and Class Members can now be sold on the dark web. Hackers access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers. Upon information and belief, this information has already been put on or offered for sale on the dark web.

15.     The Data Breach was the inevitable result of Defendant's inadequate approach to data security. The deficiencies in Defendant's data security were so significant that the initial intrusion by unauthorized third-party hackers went undetected; Defendant's investigation into the incident took more than seven months.

16.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, and failing to disclosure to its customers the material facts that it did not have adequate computer systems and security practices to safeguard Plaintiff's and Class Members' PII.

17.     As a result of the Defendant Data Breach, the PII of Plaintiff and Class Members has been exposed to criminals for misuse.

18.     As a direct and proximate consequence of Defendant's actions, vast amounts of customer information were accessed, improperly encrypted, and/or stolen from Defendant's computer network.

19.     Plaintiff retains a significant interest in ensuring that her PII, which remains in the possession of Defendant, is protected from further breaches, and seeks to remedy the harms she has suffered on behalf of herself and similarly situated consumers whose PII was stolen as a result of the Defendant's Data Breach.

20.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) avoid sharing the PII of Plaintiff and Class Members without adequate safeguards. Defendant's conduct amounts to negligence and violates federal and state statutes.

21.     Plaintiff, on behalf of herself and similarly situated consumers, seeks to recover damages, equitable relief including injunctive relief to prevent a reoccurrence of the data breach and resulting injury, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies this Court deems proper.

22.     As a direct and proximate result of Defendant's data security failures and the Data Breach, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party, and Plaintiff and Class Members have suffered actual, present, concrete injuries. These injuries include: (i) the current and imminent risk of fraud and identity theft (ii) lost or diminished value of PII ; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data

Breach, including but not limited to lost time; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; (vi) the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and the Class Members' PII; and (viii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII.

23.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose PII was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security.

24.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

25.     Plaintiff Iris Perez is a resident of the state of Maryland. Plaintiff Perez purchased a vehicle from Koons in November 2016. In connection with this purchase, she was required to provide her name, address, Social Security number, driver's license number, and financial account information.

26.     Plaintiff Perez received a "Notice of Security" Letter dated January 14, 2022, on or about that date. In or around June of 2021, Plaintiff Perez was contacted by Experian, a consumer credit reporting agency, and was advised that her Social Security number was in use by another individual who had assumed her name. Plaintiff Perez was also informed by an identity theft monitoring service that her Social Security number, as well as her driver's license number, was found on the dark web.

27.     As a result of the Data Breach, Plaintiff Perez has been forced to spend countless hours communicating with and traveling to the Social Security Administration and the Maryland Department of Motor Vehicles in an attempt to secure her sensitive identification documents.

28.     Plaintiff Perez would not have provided her PII to Defendant had Defendant told her that it lacked adequate computer systems and data security practices to safeguard her PII from improper access, improper encryption, and/or improper removal.

29.     Plaintiff suffered actual injury from having her PII compromised and stolen in and as a result of the Defendant's Data Breach.

30.     Plaintiff suffered actual injury and damages in paying money to and purchasing products from Defendant that she would not have paid had Defendant disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII.

31.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII – a form of intangible property that Plaintiff entrusted to Defendant for the purpose of securing financing while purchasing her vehicle and was compromised in and as a result of the Data Breach.

32.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by her PII being placed in the hands of criminals who have already misused such information stolen in the Data Breach via the sale or publication of Plaintiff's and Class Members' PII on the dark web, as evidenced by the compromise of Plaintiff's Social Security number and driver's license information. Plaintiff has a continuing interest in ensuring that her private information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

33.    Defendant Jim Koons Management Company owns, operates, and does business as Jim Koons Automotive Companies. Defendant is Maryland corporation with a principal office location of 9822 Sorrell Avenue, Potomac, Maryland 20854.

34.    Defendant owns and operates 22 locations throughout the Mid-Atlantic Region. Defendant is one of the 15 largest privately-held dealership organizations in the United States and largest automotive group headquartered in Delaware and the Washington, DC metro area – including Virginia and Maryland.

35.    Defendant's dealerships sell new and used vehicles, purchase vehicles for resale, and provide automotive services. Defendant's dealerships accept  payment for their vehicles and services by accepting upfront payments for services or down payments along with financing options for its vehicles. Financing can be secured by customers through Defendant's financial services provider.

## JURISDICTION AND VENUE

36.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members, many of which are citizens of a different state than Defendant.

37.    This Court has personal jurisdiction over Koons because it is headquartered in and maintains its principal place of business in this District. Koons is authorized to and regularly conducts business in Maryland. In this District, Koons makes decisions regarding corporate governance and management of its businesses, including decisions regarding the security measures to protect its customers' PII. Koons intentionally avails itself of this jurisdiction by promoting, selling and marketing its services from Maryland to thousands of consumers nationwide. Venue is

proper in this District under 28 U.S.C. § 1391(a) through (d) because Koons' headquarters and principal place of business are located in this District, Koons resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Koons' governance and management personnel or inaction by those individuals that led to misrepresentations, invasions of privacy, and the Data Breach.

## FACTUAL ALLEGATIONS

### A. Background

38.     Defendant collected and stored some of Plaintiff's and Class Members' most sensitive and confidential information, including, but not limited to names, addresses, Social Security numbers, driver's license numbers, and financial account information.

39.     Plaintiff and Class Members were customers and/or employees of Defendant whose PII was required to be provided, and was provided, to Defendant in conjunction with purchasing, leasing, selling, and trading of automobiles or during the court of their employment with Defendant. Plaintiff's and Class Members' were required to fill out various forms of paperwork, including without limitation applications for purchase agreements, loan applications, authorizations to check credit, and other form documents associated with the purchase, leasing, selling, or trading of automobiles, and employment documentation.

40.     Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

41.    Defendant operates twenty-two (22) automotive dealerships across several states.[7] These dealerships sell new and used vehicles, purchase vehicles for resale, and provide automotive services. Defendant's dealerships accept  payment for their vehicles and services by accepting upfront payments for services and vehicles or down payments in conjunction with financing options for its vehicles. Financing can be secured by customers through Defendant's financial services provider.

42.    As a condition of these services and sales, customers are required to provide their PII, including, without limitation, names, addresses, Social Security numbers, driver's license numbers, and financial account information

43.    At all relevant times, Defendant was well-aware, or reasonably should have been aware, that the PII it maintains is highly sensitive and could be used for wrongful purposes by third parties, such as identity theft and fraud.

44.    As a condition of its relationships with Plaintiff and Class Members, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII.

45.    Defendant has historically acquired, collected, and stored the PII of Plaintiff and Class Members.  As part of being a customer and/or employee of Defendant, Plaintiff and Class Members, are required to give their sensitive and confidential PII to Defendant. Defendant retains and stores this information, and derives a substantial economic benefit from the PII that it collects. But for the collection of Plaintiff's and Class Members' PII, Defendant would be unable to sell or lease any automobiles or employ anyone for the purpose of assisting Defendant with selling or leasing any automobiles.

---

[7] https://www.koons.com/locations/index.htm (last visited Feb. 22, 2022).

46.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

47.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

48.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.

49.     Defendant's policies on its website include promises and legal obligations to maintain and protect PII, demonstrating an understanding of the importance of securing PII.

50.     Defendant states that it understands the importance of protecting this information. Defendant's Privacy Policy states that it "collect[s] and maintain[s] the personal information of our consumers for our use and our subsidiaries. We do not sell, rent, or trade consumer information to third parties, other than as described below, and never without your consent."[8]

51.     Defendant's Privacy Policy further states that it "will take reasonable physical, electronic and managerial measures to safeguard and secure any information you provide to us (e.g. data will be stored in protected databases on secured servers with restricted access)."[9]

52.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[8] Ex. 2.
[9] *Id.*

### B.  The Data Breach

53.    On June 5, 2021, Defendant discovered unusual activity on certain computer systems.

54.    According to Defendant, it confirmed that an unauthorized actor gained access to a portion of the network and encrypted network files.

55.    On or about January 14, 2021, Defendant reported the Data Breach to the Attorney General of Maine and submitted a sample notice of the Data Breach, which stated, in part:

> The purpose of this letter is to notify you about a recent data incident that may involve some of your information. This notice provides you with information about the incident, our response, and additional steps you may take to protect your information, should you determine it is appropriate to do so.
>
> **What Happened?** Jim Koons Automotive Company ("Koons") discovered unusual activity on certain computer systems beginning on June 5, 2021. We promptly took steps to secure the network and, with the assistance of computer forensic specialists, conducted an investigation to determine the nature and scope of the event. The investigation confirmed that an unauthorized actor gained access to a portion of the network and encrypted network files. Given that network locations were accessed without authorization, we undertook a lengthy, time-intensive, and thorough review of the potentially impacted information in order to identify the information that was potentially impacted and to whom it related. We completed this review on or around December 21, 2021, at which time we confirmed the individuals whose information was present. We then worked to reconcile the results of the review with our internal records in furtherance of identifying the individuals to whom the data related and the appropriate contact information for those individuals in order to provide notification to potentially impacted individuals as quickly as possible. Although we have no evidence of actual or attempted misuse of your information, in an abundance of caution, we are notifying you about the event so that you may take steps to protect your information.
>
> **What Information Was Involved?** The involved Koons systems contained your name and <<Breached Elements>>.As stated above, Koons is currently unaware of any actual or even attempted misuse of information.

**What We Are Doing.** We take this incident very seriously. Information privacy and security are among our highest priorities, and we have strict security measures in place to protect information in our care. Upon discovering this incident, we quickly took steps to investigate and respond, including reviewing and enhancing our existing policies and procedures to reduce the likelihood of a similar future event. Koons reported this incident to federal law enforcement and is notifying potentially affected individuals and relevant regulators as required. Moreover, as an added precaution, Koons is offering <<credit monitoring length>> of complimentary access to credit monitoring and identity restoration services to potentially impacted individuals out of an abundance of caution because your information was determined to be present in the systems that may have been accessed during the incident.[10]

56.     The sample notice of the Data Breach provided to the Maine Attorney General included a document labeled "Exhibit 1," which stated, in part:

Koons discovered unusual activity on certain computer systems beginning on June 5, 2021. Koons promptly took steps to secure the network and, with the assistance of computer forensic specialists, conducted an investigation to determine the nature and scope of the event. The investigation confirmed that an unauthorized actor gained access to a portion of the network and encrypted network files. Given that network locations were accessed without authorization, Koons undertook a lengthy and time-intensive thorough review of the potentially impacted information in order to identify the information that was potentially impacted and to whom it related. That review was completed on or around December 21, 2021, at which time Koons confirmed the individuals whose information was present, and worked to reconcile the results of the review with their internal records in furtherance of identifying the individuals to whom the data related and the appropriate contact information for those individuals in order to provide notification to potentially impacted individuals as quickly as possible.

The information that could have been subject to unauthorized access varies by individual, but may include name, address, Social Security

---

[10] Exhibit 3 ("ME AG Sample Letter"), at 4.

number, driver's license number, and financial account information.[11]

57.     On or about January 14, 2022, Defendant notified the Delaware and California Attorneys General of the Data Breach.[12] Defendant informed the California Attorney General that the breach began on May 19, 2021 and continued through June 5, 2021. To date, Koons has not revealed when the unauthorized actor first gained access to a portion of Defendant's network, nor has it revealed the mechanism by which the unauthorized actor first gained access to Defendant's network.

58.     Upon information and belief, the unauthorized actor gained access to Koons' network well in advance of the June 5, 2021 date that the intrusion was first discovered by Koons meaning that the unauthorized actor had unfettered and undetected access to Defendant's networks for a considerable period of time prior to Defendant becoming aware of the unauthorized access to its computer systems and network.

59.     After Koons initially discovered the unauthorized access to its systems, Koons commissioned computer forensic specialists to conduct an investigation to determine the nature and scope of the event.

60.     The investigation commissioned by Koons did not conclude until December 21, 2021, and notice was not sent to victims of the data breach until nearly a month after that. Thus, the victims of this Data Breach, including Plaintiff and Class Members, were not sent notice of this Data Breach until approximately seven (7) months after Koons first knew about this Data Breach

---

[11] Ex. 3, at 2.
[12] Exhibit 4 ("DE AG Sample Letter"); Exhibit 5 ("CA AG Sample Letter").

61.     Defendant posted the Website Notice on its website. The Website Notice appeared in substantially the same form as the Sample Notices provided to the State Attorneys General. The Website Notice has since been removed from Defendant's website.

62.     Defendant first directly notified its impacted consumers of the incident on or around January 14, 2022, sending written notifications to individuals whose personal information was compromised in the Data Breach.

63.      Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

64.     Plaintiff further believes her PII, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type, and Plaintiff's Social Security number and driver's license were found on the dark web shortly after the Data Breach occurred.

## C.  *Securing PII and Preventing Data Breaches*

65.     Defendant could have prevented the Data Breach by properly securing and encrypting Plaintiff's and Class Members' PII, or Defendant could have destroyed the data, especially old data that Defendant had no legal right or responsibility to retain.

66.     Defendant's negligence in safeguarding Plaintiff's and Class Members' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

67.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." [13]

---

[13] 17 C.F.R. § 248.201 (2013).

The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

68.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

69.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

70.    The ramifications of Defendant's failure to keep secure Defendant's current and former employee's PII are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**D.  *Value of Personal Identifiable Information***

71.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and

---

[14] *Id.*

16

bank details have a price range of $50 to $200.[15] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

72.    Social Security numbers, for example, are among the most sensitive kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[18]

73.    It is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

---

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:    https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/    (last accessed Jan. 20, 2022).

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:    https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last visited Feb. 22, 2022).

[17] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 22, 2022).

[18] SOCIAL SECURITY ADMINISTRATION, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Feb. 22, 2022).

74.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

75.    The information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Security Incident is impossible to "close" and difficult, if not impossible, to change.

76.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[20]

77.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

78.    The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

79.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

---

[19] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Feb. 22, 2022).
[20] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Feb. 22, 2022).

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

80.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and Class Members' PII, including Social Security numbers and drivers license numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

81.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

82.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, potentially amounting to hundreds of thousands of individuals' detailed and confidential personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

83.     Although Defendant has offered individuals whose PII was impacted by the Data Breach limited credit monitoring, the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

84.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

---

[21] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last visited Feb. 22, 2022).

19

### E.  Plaintiff Iris Perez's Experience

85.    Plaintiff Perez purchased her vehicle from Defendant in November of 2016. As a condition of her purchase, she was required to provide and entrust her PII, including but not limited to her name, driver's license number, Social Security number, and financial account information.

86.    Plaintiff Perez monitors her credit using a credit monitoring service, as well as an identity theft monitoring service. In June of 2021, Plaintiff Perez learned from these services that her Social Security number and driver's license number were found on the dark web. Additionally, Plaintiff Perez learned that another individual had been using her Social Security number and had stolen her identity.

87.    Plaintiff Perez has spent countless hours attempting to deal with the fallout from this identity theft. This time is lost forever and cannot be recaptured.

88.    Plaintiff Perez received a "Notice of Security" Letter dated January 14, 2022, on or about that date. The letter notified Plaintiff that on June 5, 2021, Koons identified unusual activity on its network and that "an unauthorized action gained access to a portion of the network and encrypted network files."

89.    The type of data at issue included full names, addresses, Social Security numbers, driver's license numbers, and financial account information of Koon's customers.

90.    The letter further advised that Plaintiff that she should spend time reviewing her bank statements and monitor her credit reports for suspicious activity.

91.    As a result of the letter notifying her of the Data Breach, Plaintiff Perez spent additional time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the letter, exploring further credit monitoring and identity theft insurance

options, and self-monitoring her accounts. This time, in addition to the countless hours Plaintiff Perez expended in 2021, has also been lost forever and cannot be recaptured.

92.     Additionally, Plaintiff Perez is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

93.     Plaintiff Perez stores any documents containing her PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

94.     Plaintiff Perez suffered actual injury in the form of identity theft. Plaintiff Perez has been forced to replace her driver's license and freeze and/or replace her Social Security number as a result of this identity theft.

95.     Further, Plaintiff Perez suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Plaintiff Perez entrusted to Defendant for the purpose of her purchase, which was compromised in and as a result of the Data Breach.

96.     Plaintiff Perez suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

97.     Plaintiff Perez has suffered injury arising from the substantially increased and already manifested risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third-parties and criminals.

98.     Plaintiff Perez has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

99.    Plaintiff seeks relief on behalf of herself and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide Class defined as follows:

> All persons whose PII was accessed, viewed, or removed during the Data Breach reported by Defendant in or around January 2022.

100.    Excluded from the Class is Defendant and any of its parents or subsidiaries, any entities in which they have a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as her or her judicial staff and immediate family members.

101.    Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

102.    The proposed Class meet the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

103.    **Numerosity. Fed. R. Civ. P. 23(a)(1).**  The members of the Class are so numerous that the joinder of all members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, public news reports indicate that approximately 114,000 individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Koons' records, Class Members' records, publication notice, self-identification, and other means.

104.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Common questions of law  and fact exist and predominate over any questions affecting only individual Class Members. The common questions include:

a.  Whether Defendant had a duty to protect PII;

b.  Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

c.  Whether Defendant knew or should have known that its computer systems were vulnerable to attack;

d.  Whether Defendant has an implied contractual obligation to use reasonable security measures;

e.  Whether Defendant has complied with any implied contractual obligation to use reasonable security measures;

f.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class Members;

g.  Whether Defendant's breaches of its legal duties caused Plaintiff and the Class Members to suffer damages;

h.  Whether Plaintiff and Class Members are entitled to recover damages; and

i.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

105.  **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of those of other Class Members because Defendant failed to safeguard Plaintiff's information, like that of every other Class member.

106.  **Adequacy. Fed. R. Civ. P. 23(a)(4).**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation.

107.    **Superiority. Fed. R. Civ. P. 23(b)(3).**   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

108.    Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

109.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

110.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.    Whether Class Members' PII was accessed, compromised, or stolen in the Data Breach;

b.    Whether (and when) Defendant knew about the Data Breach before it was announced to the public and failed to timely notify the public of the Breach;

c.    Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

d.    Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their PII;

e.      Whether Defendant's conduct was an unlawful or unfair business practice under state consumer protection statutes;

f.      Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

g.      Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent the loss or misuse of that information;

h.      Whether Defendant failed to take commercially reasonable steps to safeguard the PII of Plaintiff and the Class Members and thereby knowingly divulged the PII of Plaintiff and the Class Members while carried and maintained on Defendant's data systems

i.      Whether an implied contract existed between Defendant and Plaintiff and the Class Members and the terms of that implied contract; and,

j.      Whether Defendant breached the implied contract;

111.    All members of the proposed Class are readily ascertainable. Defendant has access to information regarding which of its restaurants were affected by the Data Breach, the time period of the breach, which customers were potentially affected, as well as the addresses and other contact information for members of the Class, which can be used for providing notice to the Class Members.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

112.    Plaintiff restates, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 111 as if fully set forth herein.

113.    Koons owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their PII and keeping it from being compromised, lost, stolen, misused,

25

and or/disclosed to unauthorized parties. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Koons's data security systems to ensure that Plaintiff's and Class Members' PII in Koons's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its data systems in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data and cyber security measures consistent with industry standards.

114.    Upon accepting and storing the PII of Plaintiff and Class Members in its computer systems, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Defendant knew that the PII was private and confidential and should be protected as private and confidential.

115.    By being entrusted by Plaintiff and the Class to safeguard their PII, Koons had a special relationship with Plaintiff and the Class. Plaintiff and the Class agreed to provide their PII with the understanding that Koons would take appropriate measures to protect it, and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. Koons did not.

116.    The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII to Plaintiff and the Class so that Plaintiff and Class Members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

117.    Koons knew that the PII belonging to Plaintiff and the Class was personal and sensitive information that is valuable to identity thieves and other criminals. Koons also knew of

the serious harms that could happen if the PII of Plaintiff and the Class was wrongfully disclosed, that disclosure was not fixed, or Plaintiff and the Class were not told about the disclosure in a timely manner

118.    Defendant has a common law duty to prevent the foreseeable risk of harm to its customers, including the Plaintiff and the Class. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Koons knew that it was more likely than not Plaintiff and other Class Members would be harmed

119.    Defendant's also had duty to use reasonable data security measures arising under §5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Payment Card Data by businesses such as Defendant.  The FTC publications and data security breach orders described above further form the basis of Defendant's duty.

120.    Defendant breached its duty to Plaintiff and the Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering its dilatory practices, Defendant failed to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII, and/or intentionally disclose it to others without consent.

121.    Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite repeated warnings of the dangers, and allowing unauthorized access to Plaintiff's and the other Class member's PII.

122.    Defendant breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. Defendant breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose in a timely fashion that Plaintiff's and Class Members' PII in Koons's possession had been or was reasonably believed to have been, stolen or compromised.

123.    Defendant's failure to comply with industry and federal regulations further evidences Koons's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' PII. Defendant failed to take proper security measures to protect PII of Plaintiff and Class Members.

124.    Defendant's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiff and Class Members; and failing to provide Plaintiff and Class Members with timely and sufficient notice that their sensitive PII had been compromised.

125.    But for Koons's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

Koons's negligence was a direct and legal cause of the theft of the PII of Plaintiff and the Class and all resulting damages.

126.    Koons also had a duty to promptly notify Plaintiff and Class Members of data breach because of laws and regulations that require Koons to reasonably safeguard PII, as detailed herein.

127.    Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, cancel current passports and obtain new passports, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Koons's misconduct.

128.    The injury and harm suffered by Plaintiff and the Class Members was the reasonably foreseeable result of Koons's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII. Koons knew its systems and technologies for processing and securing the PII of Plaintiff and the Class had numerous security vulnerabilities.

129.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent

researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers in its continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's goods and services they received.

130.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff restates, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 111 as if fully set forth herein.

132.    Defendant solicited and invited Plaintiff and Class Members to shop at its dealerships and/or make purchases using their financing options. To make these purchases, customers were required to provide their PII. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant before the Data Breach.

133.    Plaintiff and Class Members entered into an implied contract with Koons when they purchased vehicles using financing from Koons, or otherwise provided PII to Koons.

134.    As part of these transactions, Koons agreed to safeguard and protect the PII of Plaintiff and Class Members.

135.    Plaintiff and Class Members entered into the implied contracts with the reasonable expectation that Koons's data and cyber security practices and policies were reasonable and consistent with industry standards. Plaintiff and Class Members believed that Koons would use part of the monies paid to Koons under the implied contracts to fund adequate and reasonable data and cyber security practices

136.    Each purchase at Defendant's dealerships made by Plaintiff and Class Members was made pursuant to the mutually agreed-upon implied contract with Defendant under which Defendant agreed to safeguard and protect the PII of Plaintiff and Class Members, and to timely and accurately notify them if such information was compromised or stolen.

137.    Plaintiff and Class Members would not have provided and entrusted their PII to Koons or would have paid less for Koons's services in the absence of the implied contract or implied terms between them and Koons.  The safeguarding of the PII of Plaintiff and Class Members was critical to realize the intent of the parties.

138.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

139.    Koons breached its implied contracts with Plaintiff and Class Members to protect their PII when it: (1) failed to have security protocols and measures in place to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

140.    As a direct and proximate result of Defendant's breaches of the implied contracts between Defendant and Plaintiff and Class Members, Plaintiff and Class Members sustained actual

losses and damages as described in detail above, including that they did not get the benefit of the bargain for which they paid.

## COUNT III
## Breach Of Contract
### (On Behalf of Plaintiff and the Class)

141.    Plaintiff restates, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 111 and above as if fully set forth herein.

142.    As an automotive dealer, Defendant entered into contracts with Plaintiff and Class Members.

143.    At all times during Plaintiff's and Class Members' interactions with Koons, Koons was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Koons.

144.    Defendant's Privacy Policy states that it "collect[s] and maintain[s] the personal information of our consumers for our use and our subsidiaries. We do not sell, rent, or trade consumer information to third parties, other than as described below, and never without your consent."[22]

145.    Defendant's Privacy Policy further states that it "will take reasonable physical, electronic and managerial measures to safeguard and secure any information you provide to us (e.g. data will be stored in protected databases on secured servers with restricted access)."[23]

146.    Plaintiff and Class Members on the one hand, and Koons on the other, formed a contract when Plaintiff and Class Members provided PII to Koons subject to the Privacy Policy.

---

[22] Ex. 2, *available at* https://www.koons.com/privacy.htm (last visited Feb. 22, 2022).
[23] *Id.*

147.    Plaintiff and Class Members provided their PII to Koons when they, among other things, used Koons's services, browsed Koons's vehicles online and requested quotes, purchased vehicles from Koons, and/or used Koons's resources to secure financing for a purchase. Consequently, Plaintiff and Class Members who transacted with Koons manifested their willingness to enter into a bargain with Koons and intention to assent to the terms of the Privacy Policy by providing their PII to Koons.

148.    Conversely, Koons, in collecting Plaintiff's and Class Members' PII, manifested its intent to adhere to its obligations under the Privacy Policy, including using "reasonable physical, electronic and managerial measures to safeguard and secure" customers' PII.

149.    The promises and representations described above relating to the collecting, maintaining, and safekeeping of PII and other industry practices, and about Defendant's purported concern about its customers' privacy rights became terms of the contract between Defendant and its customers, including Plaintiff and Class Members.

150.    Defendant breached these promises by failing to comply take reasonable precautions to protect the PII of its customers, failing to recognize, prevent, and/or detect in a timely manner a breach of its security systems, and failing to notify Plaintiff and Class Members of unauthorized access and/or acquisition of their PII within a reasonable period of time.

151.    Plaintiff and Class Members fully performed their obligations under the contracts with Koons. Koons breached its agreements with Plaintiff and Class Members by failing to protect their PII. Specifically, Koons: (1) failed to take reasonable steps to use safe and secure systems to protect PII; (2) failed to have appropriate security protocols and measures in place; (3) allowed unauthorized third parties to gain access to customers' PII; and (4) failed to promptly alert or give notice of the Data Breach to Plaintiff and Class Members.

152.     As a direct and proximate result of these breaches of contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above, including that they did not get the benefit of the bargain for which they paid.

153.     Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

154.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 111 as through fully stated herein.

155.     Plaintiff and Class Members have an interest, both equitable and legal, in the PII conferred upon, collected by, and maintained by Koons and that was stolen in the Data Breach.

156.     Koons benefited from receiving Plaintiff's and Class Members' PII by its ability to retain and use that information for its own benefit. Koons understood this benefit.

157.     Koons also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Koons maintaining the privacy and confidentiality of that PII.

158.     But for Koons's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and untrusted with Koons. Indeed, if Koons had informed Plaintiff and Class Members that Defendant's data and cyber security measures were inadequate, Koons would not have been permitted to continue to operate in that fashion by regulators or its consumers.

159.    Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted and have accepted or retained that benefit. Defendant profited from the purchases and used the PII of Plaintiff and Class Members for business purposes.

160.    The amounts Plaintiff and Class Members paid for Defendant's goods and services were used, in part, to pay for the administrative costs of data management and security.

161.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement the data management and security measures that are mandated by industry standards.

162.    Defendant failed to secure the PII of Plaintiff and Class Members and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

163.    Defendant acquired the PII through inequitable means in that Defendant failed to disclose the inadequate security practices previously alleged.

164.    If Plaintiff and Class Members knew that Defendant would not secure their PII using adequate security, they would not have used the services of Inova.

165.    Plaintiff and Class Members have no adequate remedy at law.

166.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs

associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers in its continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's goods and services they received.

167.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

168.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that Defendant unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's goods and services.

**COUNT V**
**Violation of the Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law § 13-301, et seq. ("MDTPA")**
**(On Behalf of Plaintiff and the Class)**

169.    Plaintiff restates, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 111 and above as if fully set forth herein.

170.    Defendant is a "person" as defined by Md. Comm. Code § 13-101(h).

171.    Defendant's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

172.    Plaintiff and Class Members are "consumers" as defined by Md. Comm. Code § 13-101(c).

173.    Defendant advertises, offers, or sells "consumer goods" or "consumer services" as defined by Md. Comm. Code § 13-101(d).

174.    Defendant advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly affecting the people of Maryland, as well as non-residents of Maryland transacting business with Defendant within the state. In advertising, offering or selling goods and services, Defendant represented to the public that it would take reasonable steps to safeguard customers' personal information and failed to disclose the material fact that it had failed to enact reasonable protective measures with respect to PII entrusted to it by consumers.

175.    Section 13-301 of the Maryland Consumer Protection Act defines an unfair or deceptive trade practice, in relevant part, as the following: "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) The promotion or sale of any consumer goods, consumer realty, or consumer service..." Md. Code Ann., Com. Law § 13-301(9)(i).

176.    Defendant engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including:

      a.    False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

      b.    Representing that consumer goods or services have a characteristic that they do not have;

     c.       Representing that consumer goods or services are of a particular standard, quality, or grade that they are not;

     d.       Failing to state a material fact where the failure deceives or tends to deceive;

     e.       Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered;

     f.       Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

177.    Defendant was and is engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services, in violation of Md. Comm. Code § 13-303, including:

     a.       Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII which was a direct and proximate cause of the Data Breach;

     b.       Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

     c.       Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Class Members' PII, including duties imposed by the Maryland Personal Information Protection Act, Md.

Comm. Code § 14-3503, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting through its Privacy Policies that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' personal information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members PII, including duties imposed by the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503.

178.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers regarding the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information. Defendant's misrepresentations and omissions would have been important to consumers in making financial decisions.

179.   Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

180.    Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant's business would have suffered, and it would have been forced to adopt reasonable data security measures and comply with the law.

181.    Plaintiff and Class Members would not have made the choice to purchase their vehicles at Koons, had the Defendant disclosed that its security systems were inadequate.

182.    Defendant acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights.

183.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

184.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' PII, and from refusing to issue prompt, complete, and accurate

disclosures to Plaintiff and the Class Members;

C.   For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

   iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' personal identifying information;

   v.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

   vi.   requiring Defendant to engage independent third-party security auditors and

41

internal personnel to run automated security monitoring;

vii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

viii.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.    requiring Defendant to conduct regular database scanning and securing checks;

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii.  requiring Defendant to implement, maintain, regularly review, and revise as

42

necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

    xiv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

    xv.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: April 11, 2022                          Respectfully submitted,

43

By: */s/ Tara L. Tighe*
TARA L. TIGHE
# 19548
**MORGAN AND MORGAN**
1901 Pennsylvania Avenue, N.W Suite 300
Washington, DC 20006
Phone: (571) 357-7600
Direct: (571) 357-7598
Fax: (571) 357-7624
ttighe@forthepeople.com


JEAN S. MARTIN*
FRANCESCA KESTER*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
jeanmartin@forthepeople.com
fkester@forthepeople.com


*Attorneys for Plaintiff and the Proposed Class*

* *pro hac vice* applications forthcoming